Thomas S. Waldo
Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801-1145
Phone: (907) 586-2751
Fax: (907) 463-5891
Email: twaldo@earthjustice.org

Nathaniel S. W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Phone: (360) 570-9309
Fax: (360) 570-9310
Email: nlawrence@nrdc.org

**FILED**

DEC 1 6 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, SOUTHEAST ALASKA CONSERVATION COUNCIL, SIERRA CLUB, NATIONAL AUDUBON SOCIETY, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Case No. J03-029 CV (JKS) ) ) ) ) ) ) ) ) ) |

**JOINT STATUS REPORT**

On August 5, 2005, the Ninth Circuit Court of Appeals remanded this matter to this Court "to address the scope of permanent injunctive relief." *Natural Resources Defense Council v. United States Forest Service*, 421 F.3d 797, 816 n.29 (9th Cir. 2005). No party has sought rehearing or certiorari, and the Court of Appeals issued its mandate on September 30, 2005.

Since that time, the parties have begun settlement negotiations on the scope of permanent injunctive relief. The parties would like to continue these negotiations in the hope of avoiding contested proceedings. The parties propose that they continue these discussions and submit a new status report to the Court no later than January 20, 2006.

All parties have authorized the undersigned to submit this as the joint report of the parties.

Respectfully submitted this 16th day of December, 2005,

Thomas S. Waldo
Eric P. Jorgensen
EARTHJUSTICE

Nathaniel S. W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL

*Attorneys for Plaintiffs*

FILED

DEC 2 9 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

IT IS SO ORDERED this 28 day of _December_, 200 5,

James K. Singleton, Jr.
United States District Court Judge

LODGED
DEC 1 6 2005

J03-0029--CV (JKS)          Z. FALCON
--------------------------------
B. LANDON (AUSA)         on 12-29-05
T. WALDO
R. HAMILTON HEESE

Exhibit 37, page 2 of 3

## CERTIFICATE OF SERVICE

I, Sarah Saunders, certify that on December 16, 2005, a true and correct copy of the JOINT STATUS REPORT was served by first class mail to Bruce M. Landon, Zachary Falcon, Steve Silver, and Amy Gurton Mead.  A courtesy copy was delivered by hand to Tim Obst, USDA Office of General Counsel.

Sarah Saunders
Legal Assistant

**Exhibit 37, page 3 of 3**



United States
Department of
Agriculture

Forest Service

Tongass
National
Forest
R10-MB-570

January 2006



# Kuiu Timber Sale Area

## Draft Environmental Impact Statement



**Exhibit 38, page 1 of 8**

# 2 Alternatives

## 2.2 Alternatives Considered In Detail

The No-Action Alternative (Alternative ), Proposed Action (Alternative 4) and three other action alternatives were considered in detail. Figures 2-1 through 2-5 display the five alternatives. Tables 2-1 and 2-2 compare the proposed activities and effects of the alternatives.

### 2.2.1 Alternative 1 (Figure 2-1)

This alternative proposes no timber harvest, road construction changes to the road management objectives, or other activities within the Kuiu Timber Sale Area at this time. It represents the existing condition of the Kuiu Timber Sale Area. It does not preclude future timber harvest or other activities from this area.

### 2.2.2 Alternative 2 (Figure 2-2)

This alternative was developed to minimize impacts to wildlife and watersheds, and have no impact to roadless areas. The proposed timber harvest would result in the production of approximately 14.6 million board feet (mmbf) of timber from approximately 491 acres. Only ground-based logging systems would be used. The amount of trees remaining in a unit after harvest would vary from zero to fifty percent of the stand's pre-harvest basal area.

Where high wildlife values are identified, approximately 50 percent of the stand basal area would be retained to provide cover and structure for wildlife habitat. Harvest units in the Recreational River LUD would retain 50 percent of the stand basal area to retain scenic values. Logs would be transported to existing log transfer facilities (LTFs) in either Saginaw Bay or Rowan Bay. The Saginaw Bay LFT would require some reconstruction before use.

Approximately 2.9 miles of temporary road construction would be necessary for timber harvest. No new long-term use classified roads would be constructed. Temporary road construction would not cross any Class I or II fish streams in this alternative. The reconstruction of closed roads would require the installation of three crossing structures on Class I streams, and three crossing structures on Class II streams. Temporary road construction and closed road reconstruction would require placement of one crossing structure on a Class III stream, and five crossing structures on Class IV streams. These culverts or bridges would be removed upon completion of harvest activities.

After timber harvest is complete, 8.2 miles of currently open roads that would be used to access timber for this project would be closed to motorized traffic and placed in storage with stream crossing structures removed (Roads 6413, 46096, and 46021). Additionally, approximately 4.5 miles of roads currently in storage (Roads 6417, 46091, 46094, and 6443) would be opened and reconstructed to access timber. After harvest, these roads would be returned to storage

**Exhibit 38, page 2 of 8**

condition with all stream crossing structures removed and closed to motorized traffic.

## 2.2.3 Alternative 3 (Figure 2-3)

This alternative was developed by modifying Alternatives 2 and 4 to reduce impacts to resources such as wildlife, hydrology, and fisheries while providing a larger economic return. The proposed timber harvest would result in the production of approximately 23.6 million board feet (mmbf) of timber from approximately 794 acres. Only ground-based logging systems would be used. The amount of trees remaining in a unit after harvest would vary from zero to fifty percent of the stand's pre-harvest basal area.

Where high wildlife values were identified, approximately 50 percent of the stand basal area would be retained to provide structure for wildlife habitat. Logs would be transported to existing log transfer facilities (LTFs) in either Saginaw Bay or Rowan Bay. The Saginaw Bay LTF would require some reconstruction before use.

Approximately 7.5 miles of temporary road construction would be necessary for timber harvest. No new classified roads would be constructed. One bridge would be placed across a Class II fish stream on a temporary road to reduce impacts to fish. The bridge would be removed after timber harvest activities are completed. The reconstruction of closed roads would require the installation of two crossing structures on Class I streams and three crossing structures on Class II streams. Temporary road construction and closed road reconstruction would require placement of eight crossing structures on Class III streams, and 19 crossing structures on Class IV streams. All culverts or bridges would be removed upon completion of harvest activities.

After timber harvest is complete, 8.4 miles of currently open roads that would be used to access timber for this project would be closed to motorized traffic and placed in storage with all stream crossing structures removed (Roads 6413, 46096, and 4618). Additionally, 3.2 miles of roads currently in storage that would be opened and reconstructed to access timber would be closed to motorized traffic and returned to storage condition with all stream crossing structures removed (Roads 6417, 46091, and 46094).

## 2.2.4 Alternative 4 Proposed Action (Figure 2-4)

The Proposed Action for the Kuiu Timber Sale would result in the production of approximately 42.6 million board feet (mmbf) of timber from approximately 1,425 acres. A mix of ground-based and helicopter logging systems would be used. Helicopter logging would be used to access units on steeper ground. Using helicopters reduces the need for road construction and allows a more selective harvest on steeper slopes. The amount of trees remaining in a unit after harvest would vary from zero to fifty percent of the stand's pre-harvest basal area.

**Exhibit 38, page 3 of 8**

# 2 Alternatives

Where helicopter logging is necessary to access the standing timber, trees less than 16 inches diameter at breast height (DBH) and western hemlock greater than 36 inches DBH would be left standing to improve economics. Where high wildlife values were identified, approximately 50 percent of the stand basal area would be retained to provide cover and structure for wildlife habitat. Harvested units in the Recreational River LUD would retain 50 percent of the stand basal area. Logs would be transported to existing log transfer facilities in either Saginaw Bay or Rowan Bay. The Saginaw Bay LTF would require some reconstruction before use.

Approximately 19 miles of temporary road construction would be necessary for timber harvest. No new classified roads would be constructed. Temporary road construction would require the installation of two crossing structures across Class II fish streams. The reconstruction of closed roads would require the installation of three crossing structures on Class I streams, and three crossing structures on Class II streams. Temporary road construction and closed road reconstruction would require placement of 14 crossing structures on Class III streams, and 19 crossing structures on Class IV streams. All culverts or bridges would be removed upon completion of harvest activities.

After timber harvest is complete, 11 miles of roads that are currently open and that would be used to access timber for this project would be closed to motorized traffic and placed in storage with all stream crossing structures removed (Roads 6413, 46096, 46021, 6418, and a portion of 6427). Additionally, 6.1 miles of roads currently in storage that would be opened and reconstructed to access timber would be closed to motorized traffic and returned to storage condition with all stream crossing structures removed (Roads 6417, 46091, 6422, 6443, and a portion of 6427).

## 2.2.5 Alternative 5 (Figure 2-5)

This alternative proposes only even-aged management with clearcut harvesting of timber to increase the economic return. The proposed timber harvest would result in the production of approximately 36.3 million board feet (mmbf) of timber from approximately 1,231 acres. Only ground-based logging systems would be used. Logs would be transported to existing log transfer facilities in either Saginaw Bay or Rowan Bay. The Saginaw Bay LTF would require some reconstruction before use.

Approximately 17.1 miles of temporary road construction would be necessary for timber harvest. No new classified roads would be constructed. Temporary road construction would require the installation of two crossing structures across Class II fish streams. The reconstruction of closed roads would require the installation of three crossing structures on Class I streams, and three crossing structures on

Exhibit 38, page 4 of 8
Kuiu Timber Sale DEIS

# 2 Alternatives

## 2.6 Identification of the Preferred Alternative

At this point in the analysis, Alternative 4 has been identified as the Preferred Alternative. The recommendations were based on the environmental analysis and public and agency comments received to this date. The Responsible Official may select this alternative, another alternative, or a modification of one of the alternatives. The Responsible Official may also select another old-growth habitat reserve (OGR) option from the small OGR options discussed in Issue 2: Wildlife Habitat and Subsistence in Chapter 3.

## 2.7 Alternatives Considered but Eliminated From Detailed Study

Several alternatives were considered during the planning process, but not all have been included in the EIS for detailed study. The alternative dropped from detailed analysis is described briefly below, along with the reasons for not considering it further.

Some units within the unit pool were also eliminated from further consideration due to environmental concerns.

**2.7.1 Helicopter-logging only**

The possibility of developing a helicopter logging only alternative, which would eliminate the need for additional road construction, was considered at the request of U.S. Fish and Wildlife Service and other commenters. Because helicopter logging is the most expensive yarding method, using this as the only method would not allow the cost of helicopter logging to be offset by more cost-effective conventional ground-based systems, making this alternative financially inefficient. Using the NEAT economic model and given present market conditions, the economics of helicopter logging could not be made positive, even with increased timber volumes.

**2.7.2 Units Dropped from the Unit Pool**

Several units were dropped from consideration within any alternative. They are listed in Table 2-3 along with the rationale for elimination.

**Exhibit 38, page 5 of 8**

Kiuu Timber Sale DEIS

Appendix A

# Why is Timber from the Tongass National Forest Being Offered for Sale?

**National Legislation**

On a national level, the legislative record is clear about the role of the timber program in the multiple-use mandate of the national forests. One of the original objectives for creation of national forests was to provide natural resources, including timber, for the American public. The Organic Act of 1897 (partially repealed in 1976) directed the agency to manage the forests in order to "improve and protect the forest ... [and] for the purpose of securing favorable conditions of water flows, and to *furnish a continuous supply of timber* for the use and necessities of the citizens of the United States" (emphasis added). The Multiple-Use Sustained Yield Act of 1960 directs the Forest Service to administer federal lands for "outdoor recreation, range, timber, watershed, and wildlife and fish purposes."

The National Forest Management Act (NFMA) of 1976 states that "the Secretary of Agriculture...[may sell, at not less than appraised value, trees, portions of trees, or forest products located on National Forest System Lands]." Although the heart of the Act is the land management planning process for ational forests, the Act also sets policy direction for timber managemen and public participation in Forest Service decision-making. Under NFMA, the Forest Service was directed to "limit the sale of timber from each national forest to a quantity equal to or less than a quantity which can be removed from such forest annually in perpetuity on a sustained-yield basis."

The NFMA directs the Forest Service to complete land management plans for all units of the National Forest System. Forest Plans are developed by an interdisciplinary team to provide for the coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness. Forest plans designate areas of national forest where different management activities and uses are considered appropriate including those areas suitable for timber harvest.

**Alaska-Specific Legislation**

Timber from the Tongass National Forest is being offered for sale as part of the multiple-use mission of the Forest Service identified in the public laws guiding the agency. In addition, Alaska-specific legislation and the Tongass Forest Plan direct the Forest Service to seek to provide timber to meet market demand, subject to the budget appropriations process.

Legislation unique to Alaska directs the Forest Service to maintain a commercial timber program. The Alaska National Interest Lands Conservation Act (ANILCA) and the Tongass Timber Reform Act (TTRA) provide direction on the issue of Tongass timber supply. Section 101 of TTRA amended the ANILCA timber supply mandate and fixed

**Exhibit 38, page 6 of 8**

budget appropriations and replaced them with the following text in Section 705 (a):

> Sec. 705. (a) Subject to appropriations, other applicable law, and the requirements of the National Forest Management Act of 1976 (P.L. 94-588); except as provided in subsection (d) of this section, the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the annual market demand from such forest for each planning cycle."

**Tongass National Forest Land and Resource Management Plan (Forest Plan, as amended)**

The Record of Decision for the Tongass Land and Resource Management Plan Revision (Forest Plan) was signed by the Alaska Regional Forester in 1997. The Forest Plan incorporated new resource information and scientific studies and reflected an extensive public involvement process.

There was direction to supplement the 1997 Final EIS to evaluate and consider roadless areas within the Tongass for recommendation as potential wilderness areas as part of the March 2001 US District Court decision on litigation on the 1997 Forest Plan. The Record of Decision for the Supplemental Environmental Impact Statement was signed in February 2003. The No-action Alternative was selected; no additional lands were recommended for Wilderness designation and no changes were made to the land use designations (LUDs) from the 1997 Record of Decision. The 1997 Forest Plan defines appropriate activities within each LUD. Approximately 74 percent of the Tongass is allocated to LUDs where commercial timber harvest is not allowed.

Amendments have been made to the 1997 Forest Plan, primarily to modify small old-growth habitat reserves to meet Forest Plan criteria. These amendments have been accomplished with environmental analysis and are documented in decision documents. Due to those modifications, land use designations (LUDs) in certain areas have changed from development LUDs that allow timber harvest to Old-growth Habitat LUD or changed from the Old-growth Habitat LUD to development LUDs. Since the plan was signed in 1997, these amendments have affected approximately two percent of the acres designated as suitable commercial timber by re-designating them as Old-growth Habitat LUD where timber harvest is not allowed.

The effects to resources in the Final EIS for the 1997 Forest Plan were analyzed as if the full timber harvest allowed under each alternative would occur over the next decade and into the future. In that way the Forest Plan analysis displayed the maximum environmental effects that could be reasonably foreseen. Since substantially less timber volume and acres have been harvested in the first eight years of Forest Plan implementation than was analyzed, the effects on resources are expected to be less than

**Exhibit 38, page 7 of 8**

Appendix A

projected in the 1997 Final EIS. The environmental effects analysis in the Forest Plan estimated 267 MMBF and 10,200 acres would be harvested per year. Forest Plan monitoring indicates that average annual harvest has been less than that amount (Table A-1).

Table A-1
Projected and Actual Tongass Harvest (MMBF)

| Fiscal Year | Projected Harvest [1] | | | Actual Harvest |
|---|---|---|---|---|
| | Low | Medium | High | |
| 1998 | 77.3 | 86.0 | 112.2 | 119.8 |
| 1999 | 86.4 | 99.3 | 127.9 | 145.8 |
| 2000 | 95.5 | 115.9 | 142.7 | 146.8 |
| 2001 | 104.6 | 129.0 | 157.7 | 47.8[2] |
| 2002 | 113.7 | 134.9 | 173.1 | 33.8 |
| 2003 | 122.8 | 140.8 | 188.9 | 50.8 |
| 2004 | 131.9 | 146.5 | 205.0 | 46.0 |
| 2005 | 131.9 | 152.2 | 221.4 | 49.6 |
| 2006 | 131.9 | 157.8 | 238.2 | |
| 2007 | 132.0 | 163.4 | 255.3 | |
| Average | 112.8 | 132.6 | 182.2 | |

[1] From Morse (April 2000) and Brooks and Haynes 1997.

[2] Truncated logging season due to litigation.

On August 5, 2005, the Ninth Circuit Court of Appeals ruled that a misinterpretation of the Brooks and Haynes 1997 draft timber demand projections rendered the 1997 Record of Decision for the Tongass Land Management Plan Revision arbitrary and capricious. The court of appeals remanded the matter for further proceedings consistent with the court's opinion (*Natural Resources Defense Council v. U.S. Forest Service*). The process of remedying the defects identified by the court of appeals will be time-consuming. Delaying the completion of this and other site-specific projects should be avoided because it would result in substantially undermining the Forest Service's ability to respond to timber demand.

Exhibit 38, page 8 of 8



RECEIVED

FEB 08 2006

EARTHJUSTICE

| United States Department of Agriculture | Forest Service | Tongass Ketchikan/Misty Fiords Ranger District | 3031 Tongass Avenue Ketchikan, Alaska 99901-5743 |
|---|---|---|---|

Reply to:    2430

Date:    01/31/2006

Dear Prospective Bidder:

On 02/14/2006, at 02:00 PM, sealed bids will be opened in the Ketchikan Supervisors Office for the BUCKDANCE MADDER REOFFER sale. This sale is located in T73S, R93E, SECTIONS 20, 21, 28, 29, 30, 31, 32, 33,34; T74S, R93E, SECTIONS 2, 3, 7,10, 11, 14, 16, 18, 19, 21,22,23, 26,27, 30; T.74S., R92E., Sections 1,2,12,13,14,24,25,; T73S., R.92E., Sections 14,23,25,35,36 COPPER RIVER MERIDIAN. Timber sale Contract 2400-6 will be used. The termination date for this sale is 10/31/2010.

There are 0.7 kilometers of specified road construction.    A specified road construction cost of $64,186.59 has been allowed in the appraisal for this work.

Measurement of the estimated quantities will be made after felling. The total estimated quantity on this sale is 15,422.67 MBF. The Forest Service encourages potential bidders to make their own inspection and estimate prior to bid submission. The Forest Service makes no representation, warranty, or guarantee of the accuracy of the following quantity estimates:

### Estimated Quantities and Minimum Acceptable Rates per Unit of Measure

| Species | Product | Unit of Measure | Estimated Quantities | Average DBH | Minimum Acceptable Bid Rates | Base Rates | Required Deposits | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Slash Disposal | Road Maintenance |
| Western Hemlock | Sawtimber | MBF | 8,310.81 | 19.50 | $2.00 | $2.00 | $0.00 | $0.00 |
| Western Red Cedar | Sawtimber | MBF | 1,713.67 | 25.50 | $15.50 | $12.00 | $0.00 | $0.00 |
| Sitka Spruce | Sawtimber | MBF | 2,062.89 | 24.90 | $15.86 | $12.00 | $0.00 | $0.00 |
| Alaska Cedar | Sawtimber | MBF | 1,030.66 | 21.00 | $25.63 | $20.00 | $0.00 | $0.00 |
| Only the Fixed Rate Applies | | | | | | | | |
| Western Hemlock Utility | Pulpwood | MBF | 2,077.70 | N/A | $2.00 | $2.00 | $0.00 | $0.00 |
| Sitka Spruce Utility | Pulpwood | MBF | 226.94 | N/A | $2.00 | $2.00 | $0.00 | $0.00 |
| | Total | MBF | 15,422.67 | | | | $0.00 | $0.00 |

The minimum acceptable bid for advertised timber is $102,316.76 for the biddable species.

**Exhibit 39, page 1 of 3**

There is a $10,700.00 bid guarantee required on this sale.

If you wish further information on this sale, the prospectus and bid form, please write or call the  Ketchikan Misty Fiords Ranger District.

Sincerely,

/s/REX FRIEND
 Contracting Officer

Enclosure

**Exhibit 39, page 2 of 3**

This Agreement **must** be completed and included with your bid.

RECEIVED

FEB 0 8 2006

EARTHJUSTICE

## Agreement

_____ (Bidder's Name) is submitting a bid on the <u>Buckdance Madder</u> Reoffer Timber Sale, which is currently the subject of on-going litigation. _____ (Bidder's Name) acknowledges that the Forest Service may choose, due to the litigation, to reject all bids prior to awarding the contract. Further, awarding the contract is contingent upon agreement to the following terms and conditions:

1. The parties hereby agree, acknowledge, and accept that there is no express or implied warranty provided by the Forest Service or the United States Government that guarantees _____ ( Bidder's Name) will be allowed to complete the removal of the products sold under the terms of the contract. Upon signature of this agreement, _____ (Bidder's Name) hereby acknowledges the acceptance of the risk that this contract is subject to interruption or termination as a result of litigation associated with the environmental documentation process used by the Forest Service in the planning of this timber sale contract. If such interruption or termination occurs due to litigation, Purchaser agrees to accept as full compensation for such interruption or termination the reimbursement of Out-Of-Pocket Expenses as defined in provision B/BT 8.35  (4/04).

2. _____ ( Bidder's Name) and Forest Service agree suspension of operations does not constitute a breach of its implied duties to cooperate and not hinder performance of the **Buckdance Madder Reoffer** Timber Sale Contract.

3. If changes to the contract are made necessary by the litigation, then the contract may be modified or terminated in whole or in part under the terms of B/BT8.33 Contract Suspension and Modification (4/04).

4. The parties acknowledge that there has been no definitive time frame established as to the complete ruling on the merits for this cause of action


Agreed to on _____, 2006


_____
  Bidder

Exhibit 39, page 3 of 3

Thomas S. Waldo
Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK  99801-1145
Phone:  (907) 586-2751
Fax:  (907) 463-5891
Email: twaldo@earthjustice.org

Nathaniel S. W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Phone: (360) 570-9309
Fax: (360) 570-9310
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, SOUTHEAST ALASKA CONSERVATION COUNCIL, SIERRA CLUB, NATIONAL AUDUBON SOCIETY, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) Case No. J03-029 CV (JKS) ) ) ) ) ) ) ) ) ) |

## JOINT STATUS REPORT

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)

**Exhibit 40, page 1 of 6**

The parties submit this Joint Status Report pursuant to this Court's order of January 31, 2006 (Docket No. 99).

The issue before this Court is the appropriate relief during the period the Forest Service revises the Tongass Land Management Plan to correct the deficiencies identified by the Ninth Circuit. The Forest Service estimates that a Final Environmental Impact Statement and a Record of Decision for the plan revision will be completed about eighteen months from now.

The parties disagree about the appropriate scope of remedy in this action.

**Plaintiffs' position.** Plaintiffs in this action and in *Organized Village of Kake*, J04-029 CV (JKS) (D. Alaska), intend to seek an injunction that would, pending correction of the deficiencies identified by the Ninth Circuit, generally bar timber sales and associated roads in roadless areas of the Tongass and in areas important to the village of Kake for subsistence uses, while still allowing sufficient timber for the industry to continue logging at levels prevailing in the last five years. The Forest Service has recently offered several timber sales and road-building contracts in roadless areas that have not been the subject of any separate, site-specific legal challenges but would come within the scope of the plan-level injunction the plaintiffs will seek in this case. Plaintiffs believe that the plan-level injunction they propose is appropriate and necessary to ensure full relief for the plan-level violations found in this case.

**Defendants' position.** Defendants believe that plaintiffs can raise challenges to forest plans only within the context of specific timber sale projects and that relief in such actions is limited to the specific timber sale projects in the complaint of such actions. In light of the Ninth Circuit's decision in this action, the Forest Service has altered its timber sale schedule such that it will not sell timber pursuant to any of the timber sale projects in this action until after the signing

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)                    1                    **Exhibit 40, page 2 of 6**

of the new record of decision (ROD) on the Tongass Land Management Plant (TLMP).[1]  The

Forest Service is willing to stipulate that it will not sell those sales prior to issuance of the ROD.

In defendants' view, such a stipulation eliminates the need for any further remedy proceedings in

this action.

    **Proposed Relief Proceedings.**  The parties propose to present their competing views

through briefing on a motion by plaintiffs for permanent injunction.  The injunctive relief

proceedings should take into account two related cases pending before this Court.

    There are two cases pending before this court in addition to this consolidated case raising

the same challenges to the Tongass Land Management Plan as those raised in this case.  Those

cases are *Natural Resources Defense Council v. United States Forest Service*, (*NRDC III*), J04-

010 CV (JKS) (D. Alaska), and *Organized Village of Kake v. United States Forest Service*, J04-

029 CV (JKS) (D. Alaska).  Both of those cases also include counts beyond the plan challenges

that were before the Ninth Circuit in this action.

    In *NRDC III*, Count V has been fully briefed and awaits oral argument or decision.  In

*Organized Village of Kake*, Counts V and IX have been partially briefed.  Plaintiffs have filed

their opening brief and defendants and intervenor-defendants their opposition briefs on those

counts.  Plaintiffs' consolidated reply brief is due March 10, 2006.

    Because *NRDC III* and *Organized Village of Kake* contain counts beyond those

considered by the Ninth Circuit, the parties do not propose consolidation of those cases with this

action.  However, those cases raise the same challenges to the forest plan as this action.  The

---

[1] The one exception is the Madder/Buckdance sale and associated road project, which was the
subject of an interim partial settlement between the parties.  The parties will attempt to resolve
this issue without the Court's involvement.

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)          2          **Exhibit 40, page 3 of 6**

parties agree that any deliberations regarding injunctive relief by virtue of the plan defects

identified by the Ninth Circuit should include a consideration of any injunctive relief sought in

those two actions.  Federal defendants have already altered their sale schedule so that no timber

from the projects specifically challenged in those complaints will be sold prior to signing of the

new ROD.

The parties propose to accomplish the simultaneous consideration of injunctive relief

(due to plan defects) in all three cases by filing separate motions for relief in the three cases

using the same briefing schedule as proposed for this action.  The motions in *NRDC III* and

*Organized Village of Kake* would largely incorporate by reference (and as exhibits) the motion in

this action to avoid redundancy.

The parties propose the following schedule:

March 8, 2006      Plaintiffs file motions for permanent injunction.

April 12, 2006     Defendants and intervenor-defendants file briefs in opposition to plaintiffs'
                   motions.

April 26, 2006     Plaintiffs file reply briefs, unless plaintiffs seek discovery on factual materials
                   relevant to allegations in opposition briefs.  If plaintiffs seek discovery, the
                   parties will submit a report to the Court proposing a schedule for discovery
                   and reply brief.

In light of recent Forest Service road-building contracts in roadless areas, plaintiffs may

also seek temporary injunctive relief before the Court enters a decision on permanent relief and

may request shortened time on the request for temporary relief.  Defendants and intervenor-

defendants reserve the right to oppose any request for temporary relief or for shortened time.

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)                          3                    **Exhibit 40, page 4 of 6**

Respectfully submitted this 15th day of February, 2006,

  /s/ Thomas S. Waldo

Thomas S. Waldo (ABA#9007047)
Eric P. Jorgensen (ABA#8904010)
EARTHJUSTICE
325 Fourth Street
Juneau, AK  99801-1145
Phone:  (907) 586-2751
Fax:  (907) 463-5891
Email: twaldo@earthjustice.org

Nathaniel S. W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Phone: (360) 570-9309
Fax: (360) 570-9310
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

  /s/ Bruce M. Landon (consent)

BRUCE M. LANDON
Department of Justice
801 B Street, Suite 504
Anchorage, AK 99501-3657
Phone: (907) 271-5452
Fax: (907) 271-5827
Email: bruce.landon@usdoj.gov

*Attorney for Federal Defendants*

  /s/ Steven W. Silver (consent)

STEVEN W. SILVER
Robertson, Monagle & Eastaugh
801 W 10th Street, Suite 300
Juneau, AK 99801
Phone: (907) 586-3340
Fax: (907) 586-6818
Email: ssilver628@aol.com

*Attorney for Intervenor-Defendants*

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)                    4                    **Exhibit 40, page 5 of 6**

# CERTIFICATE OF SERVICE

I, Tom Waldo, certify that on February 15,2006, a true and correct copy of the JOINT STATUS REPORT was served electronically to Bruce M. Landon, Kevin Saxby, Steve Silver, and Amy Gurton Mead.  A courtesy copy was served by email to Tim Obst, USDA Office of General Counsel.


  /s/ Thomas S. Waldo
  Thomas S. Waldo

Natural Resources Defense Council, et al. v.
U.S. Forest Service, et al.
J03-029 CV (JKS)                     5                    **Exhibit 40, page 6 of 6**

# MINUTES OF THE UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

*Natural Resources Defense Counsel, et al. v. United States Forest Service, et al.*
Case No. 1:03-cv-00029-JKS

By:                          THE HONORABLE JAMES K. SINGLETON

Deputy Clerk:          Dan Maus, Case Management: 677-6123*

<u>PROCEEDINGS</u>:          ORDER FROM CHAMBERS

The joint status report submitted by the parties at Docket No. 106 is hereby accepted and the briefing schedule contained therein is adopted.

**IT IS SO ORDERED.**

Entered at the direction of the Honorable James K. Singleton, United States District Judge.

DATE: <u>February 16, 2006</u>

*          ALL INQUIRIES REGARDING THE SCHEDULING OR CALENDARING OF THIS CASE SHOULD BE DIRECTED TO THE ABOVE INDICATED CASE MANAGER.

Any request for other information or for clarification, modification, or reconsideration of this Order, or for extension of time must be made in the form of a motion.  *See* FED. R. CIV. P. 7(b)(1); D. Ak. LR 7.1(j) & 59(b).  No one should telephone, fax, or write to chambers regarding pending cases.  The Judge's secretary and law clerks are not permitted to discuss any aspect of this case, provide any information, or communicate with any person, including litigants, lawyers, witnesses, and the general public regarding pending cases.

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 2003\J03-0029.011.wpd

**Exhibit 41, page 1 of 1**