DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Kevin Saxby
State of Alaska Department of Law
1031 West Fourth Ave Ste. 200
Anchorage, AK 99507
kevin_saxby@law.state.ak.us
907-269-5251

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al., )<br>　　　　　Plaintiffs, )<br>v. )<br>　 )<br>UNITED STATES FOREST SERVICE, )<br>et al., )<br>　　　　　Defendants. )<br> ) | Case No. J04-0010 CV-JKS<br><br>**Opposition to Motion for Equitable Relief Pending Revision of the Tongass Land Management Plan** |

**I. Introduction**

　　　　Intervenor State of Alaska opposes the motion for equitable relief filed herein by the Plaintiffs because it is based on a faulty balancing of the equities, as explained below.

**II. Legal Framework**

　　　　In a well established line of cases, the Ninth Circuit has repeatedly held that, where Congress has spoken in the plainest of words, striking the balance in favor of a particular public policy, traditional injunction analysis and precedents that require a balancing of the equities are largely inapplicable. *National Wildlife Fed v. National Marine Fisheries v. Serv.,* 422. F 3d 782, 793-94 (9th Cir. 2005), and cases cited therein,

including, *TVA v. Hill*, 437, U.S. 153, 194, 98, S. Ct. 2279, 57 L. Ed. 2d 117 (1978). This line of cases specifically deals with application of the traditional injunction balancing analysis in Endangered Species Act cases. Id. Nevertheless, the principle is equally apropos in other situations where Congress has been plain in delineating the public interest; that is, where "Congress has struck the balance." *National Wildlife* @ 794.

That situation exists in this case. The Tongass National Forest has been given a unique directive from Congress. It is required to provide sufficient timber to meet market demand over both the short term and the long term. Specifically, Congress ordered that;

> Subject to appropriations, other applicable law, and the requirements of the National Forest Management Act of 1976 (Public Law 94-588), except as provided in (d) of this Section, the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which
> (1) meets the annual market demand for timber from such forest and
> (2) meets the market demand from such forest for each planning cycle

16 U.S.C 539d(a). Congress has already faced the public interest and balancing arguments made by the Plaintiffs in their motion. Through its appropriations and oversight functions, it is undoubtedly well aware of the road building costs and other expenditures of public funds, as well as the discrepancies between the cost of infrastructure development and stumpage receipts, relevant to management of the Tongass National Forest. It is, likewise, aware of the intense public debate surrounding any proposed resource development in Alaska, and especially the competing public view

points and interests relevant to logging old-growth timber in Southeast Alaska. Nevertheless, Congress has ordered the Secretary of Agriculture to, in accordance with applicable laws, seek to provide enough timber to meet both short-term and long-term market demand from the Forest. The challenged timber sales are a part of the Secretary's attempt to fulfill this mandate. Nothing in the Plaintiffs' filings suggest that, if offered, any of the challenged sales would fail to attract bids. To the contrary, their motion implicitly concedes that there is an active market for all of the challenged sales-otherwise they wouldn't be trying to halt them. So, the challenged sales are, presumptively, in keeping with the balancing of equities and public policies that Congress has already struck. This Court's review of the pending injunction requests should track Congress' intent in this matter. Injunctive relief should be denied, but if any is granted it should be tailored to ensure that the market demand for timber will be met.

## III. The Market Demand for Tongass Timber is Greater than 50 MMBF per year

    A.    **A Draft U.S. Forest Service Study Establishes that Demand Will Soon Exceed 50 MMBF per year**

In examining short and long-term market demand, the Court should examine and apply the most current data on point. As of the date of this document, the State of Alaska believes that the most current data is embodied in a draft publication of the United States Forest Service entitled *Timber Products Output and Timber Harvests in*

OPPOSITION TO MOTION FOR EQUITABLE RELIEF PENDING REVISION OF
THE TONGASS LAND MANAGEMENT PLAN

Case No. J04-0010 CV-JKS            3 of 3

*Alaska: Projection for 2005-25*.[1] That document projects that demand from Alaskan National Forests will range between 48 and 370 million board feet annually between 2005 and 2025. Exhibit A p.2. As mills and products are conformed to meet existing markets, the demand is projected to quickly rise towards the high end of this projected range. Id, pp. 25-26.

      **B.    Logging at Current Levels Cannot Satisfy Demand.**

The Plaintiffs' argument that the balance of equities favors injunctive relief is founded upon a critical mistaken assumption. This faulty assumption, in turn, leads to a misunderstanding of the harm likely to befall the people and economy of Southeast Alaska if the pending injunction motions are granted.

The mistaken assumption is that, if logging continues at the current levels, the people and economy of Southeast Alaska will suffer little harm because the Forest Service can continue to meet "historic" demand from the road system, apart from Kuiu Island. *See* pages 21-24 of the Plaintiff's motion in the *Kake*[2] litigation. Current levels, however, cannot provide the necessary timber base to meet even the existing capacities and needs of Southeast Alaska's mills. According to the most current study on point, the

---

[1] This entire document may be found on the Tongass National Forest's website, at http://www.fs.us/r10/tongass/ . The narrative portion is attached hereto as Exhibit A for the Court's convenience. Because it is a draft, there is a likelihood that significant changes will be made prior to final publication.

[2] *Organizaed Village of Kake, et al. v. United States Forest Service, et al.*, Case No. J04-0029-CV (JKS).

OPPOSITION TO MOTION FOR EQUITABLE RELIEF PENDING REVISION OF THE TONGASS LAND MANAGEMENT PLAN

Case No. J04-0010 CV-JKS        4 of 4

total annual capacity of all mills in Southeast Alaska has recently stabilized at 250 MMBF. Exh A, p. 12.

The study also illustrates that, even in recent years, and following the nearly 67 percent timber harvest decline from 1990-2004 attributable to the closures of several large mills, reported volumes of lumber exported from Alaska averaged 18.4 MMBF annually, while shipments to domestic markets averaged 54.9 MMBF totaling, 73.3 MMBF. Id., pp. 33-34. Moreover, the report recognizes that Alaska's market share is likely to quickly rise to meet mid '90 levels ("returns to past levels") given the emerging economies on the Pacific Rim, Alaska's increasing market share within North America and the industry's plans to adjust to current market conditions. Id., pp. 27-28. Since the current capacity of all Southeast mills is 250 MMBF, and the projections show increases in demand from the Pacific Rim and North American markets, it follows that there is a near-term market demand for considerably more than the 46-50 MMBF Plaintiffs claim to be the "historic" demand. Their suggested "status quo" average annual harvest, at less than 1/5 the current capacity of area mills, is simply inadequate to meet the statutory mandate to "provide a supply of timber from the Tongass National Forest that meets the annual market demand for timber." 16 U.S.C. § 539d(a).

As the timber supply from the Tongass National Forest dropped due to mill closures between 1997 and 2005, the timber supply from other public lands has increased. Much of this increase is attributable to deliberate policy choices made by the State of Alaska, Department of Natural Resources, to increase the volume of timber sold

from its limited Southeast land base in order to fill the gap for local mills. Declaration of Martha Freeman Welbourn, ¶ 2, Exhibit B, p. 2. Because the State of Alaska currently has a timber supply that provides a temporary surplus to the amount that may normally be cut on an annual basis, the State has been able to offer that surplus to help fill the gap left by the Tongass decline. Id, pp. 6-8. However, the surplus will probably run out by the end of fiscal year 2008, after which the State will only be able to provide a maximum of 12.8 MMBF per year or 128 MMBF over ten years. Thus, the current situation, in which the availability of State timber mitigates the extremely low supply from the Tongass, will end on July 1, 2008. After that date, Southeast mills will need to see an increase in supply from federal sources in order to even maintain current production levels, much less to meet the actual current demand. To meet the increases projected in Exhibit A, significantly more federal timber will need to be offered.

Under the injunctive orders proposed by the Plaintiffs, then, Southeast mills and the Southeast economy will not be able to operate at anything close to current capacity and will likely face a crisis, at the latest, in 2008. Unless a significant increase in the federal timber supply is permitted, current production will gradually decrease. As production declines, salaries and jobs will be affected. In their *Kake* litigation motion, at p.27, the Plaintiffs imply that only 195 Tongass timber- related jobs are directly at stake in their challenges. The State doubts that this is the complete picture for potential job loss. However, even if the figure is true, it fails to account for the full amount of loss to the people of Southeast Alaska if the pending injunction motions are granted. Almost

OPPOSITION TO MOTION FOR EQUITABLE RELIEF PENDING REVISION OF
THE TONGASS LAND MANAGEMENT PLAN

Case No. J04-0010 CV-JKS                 6 of 6

every job is likely to represent an Alaskan family.  Thus, the number of people directly affected should probably be doubled or trebled.  If the typical family is assumed, those 195 lost jobs would then translate into direct harm to 819 people (195 x 4.2 people (husband, wife and 2.2 children)).  Then, one should look at the spin-off effects.  Eight hundred nineteen people, or even one-hundred ninety five people, would purchase a lot of groceries, gasoline, clothing, housing, etc. in Southeast Alaska.  The children of those families currently fill schools.  The area churches, social clubs, and charities are attended and staffed by some of those people.

      The potential impact may become clearer by comparing the risk to another well-known industry.  In 2004, only 809 people were employed in all of Alaska as fish processors and buyers.  State of Alaska, Department of Fish and Game, Division of Commercial Fisheries, 2005 Overview.[3]  However, it could not reasonably be argued that the loss of any significant portion of these jobs could be tolerated in Alaska's coastal fishing communities.  The timber industry is, likewise, an important component of Alaska's economy, and this is especially true in Southeast Alaska.  If the timber industry is unable to obtain sufficient federal timber to remain a viable and growing industry in Southeast Alaska, the whole economy and many people are likely to suffer.  If the inadequate levels of timber currently supplied from federal lands are what will continue into the foreseeable future, that is what will happen.  The Plaintiffs' assumption that

---

[3] located at http://www.cf.adfg.state.ak.us/geninfo/about/budget/05overview.pdf .

OPPOSITION TO MOTION FOR EQUITABLE RELIEF PENDING REVISION OF
THE TONGASS LAND MANAGEMENT PLAN

Case No. J04-0010 CV-JKS         7 of 7

logging at the current levels will cause little or no harm in the balancing of equities and public policies is false.

## IV. CONCLUSION

For the reasons given above, the Motion for Equitable Relief Pending Revision of the Tongass Land Management Plan should be denied. If any relief is granted, it should be limited to enjoining only those sales that are surplus to actual market demand during the relevant time period.

RESPECTFULLY SUBMITTED this 17th day of April, 2006.

                          DAVID W. MÁRQUEZ
                          ATTORNEY GENERAL

            By:   S/Kevin M Saxby
                  Assistant Attorney General
                  Natural Resources Section
                  1031 West 4th Ave
                  Anchorage, Alaska 99501
                  NR_ECF@law.state.ak.us
                  Phone: (907)269-5100
                  Fax: (907)279-2834
                  Alaska Bar Number 861113

**Certificate of Service**

I certify that on this date, service of the foregoing in this proceeding was accomplished pursuant to the Court's electronic filing procedure,

Thomas S. Waldo
Eric P. Jorgensen
Earthjustice
325 Fourth Street
Juneau, AK 99801
and the foregoing by regular U.S. mail.

Bruce M. Landon
U.S. Department of Justice
801 B Street, Ste. 504
Anchorage, AK 99501

Nathaniel S.W. Lawrence
Natural Resources Defense Council
3723 Holiday Drive, SE
Olympia, WA 98501

Amy Gurton Mead
Robertson, Monagle, and Eastaugh
801 W 10th St. Ste 300
Juneau, AK 99801

Steve Silver
Robertson, Monagle and Eastaugh
2300 Clarendon Blvd. Ste 1010
Arlington, VA 22201

S/Kevin M Saxby
1031 West 4th Ave
Anchorage, Alaska 99501
NR_ECF@law.state.ak.us
Phone: (907)269-5100
Fax: (907)279-2834
Alaska Bar Number 8611132