RECEIVED
US ATTORNEY OFFICE
'02 MAY 13 PM 4 25

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

FILED

MAY 1 3 2002

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

| | |
|---|---|
| SIERRA CLUB, THE WILDERNESS SOCIETY, ALASKA CENTER FOR THE ENVIRONMENT, and SITKA CONSERVATION SOCIETY,<br><br>   Plaintiffs,<br><br>vs.<br><br>MARK E. REY, Under Secretary for Natural Resources and Environment, United States Department of Agriculture; and UNITED STATES FOREST SERVICE,<br><br>   Defendants. | Case No. J00-0009 CV (JKS)<br>Case No. J99-0013 CV (JKS)<br>(Consolidated)<br><br>**FINDINGS OF FACT AND**<br><br>**CONCLUSIONS OF LAW** |
| ALASKA FOREST ASSOCIATION, CITY OF COFFMAN COVE, METLAKATLA INDIAN COMMUNITY, and CONCERNED ALASKANS FOR RESOURCES AND ENVIRONMENT,<br><br>   Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE, THE UNITED STATES FOREST SERVICE, DAN GLICKMAN, JAMES LYONS, MICHAEL DOMBECK, RICK CABLES, THOMAS PUCHLERZ, CAROL JORGENSEN, and FRED SALINAS in their official capacities, respectively, as Secretary of Agriculture; Under Secretary of Agriculture; Chief, Forest Service; Regional Forester for the Alaska Region of the Forest Service; Forest Supervisor, Tongass National Forest; Assistant Forest Supervisor, Stikine Area, Tongass National Forest; and Assistant Forest Supervisor, Chatham Area, Tongass National Forest,<br><br>   Defendants. | |

EXHIBIT 8
Page 1 of 7

165

This is an environmental case involving the legality of the revised Tongass Land Management Plan ("TLMP"). Plaintiffs, the Sierra Club, the Wilderness Society, the Alaska Center for the Environment and the Sitka Conservation Society, filed suit alleging that Defendants James R. Lyons,[1] Under Secretary for Natural Resources and Environment, United States Department of Agriculture, and the United States Forest Service (collectively "the Forest Service") violated the National Forest Management Act ("NFMA"), see 16 U.S.C. § 1600–1614, and the National Environmental Policy Act ("NEPA"), see 42 U.S.C. § 4321–4370, in its TLMP revision.[2] The Court agreed with Plaintiffs and found that the Forest Service "violated NFMA and NEPA in the revised TLMP by failing to consider any alternatives with new wilderness recommendations." See Docket No. 47 at 32. The Court enjoined the Forest Service "from taking any action to change the wilderness character of any eligible roadless area until the Forest Service complies with [NEPA] and [NFMA]." See id. The Court also required the Forest Service to "prepare a [supplemental environmental impact statement] ("SEIS") that evaluates and considers roadless areas within the Tongass [National Forest] for recommendation as potential wilderness areas." See id. Additionally, the Court required the Forest Service to "provide the relative contribution to the National Wilderness Preservation System in its analysis of the management situation." See id.

Following the issuance of the order and entry of judgment, the Court stayed the injunction, pending a further development of the record that would assist the Court in determining the appropriate scope of the injunction. See Docket No. 76. The parties provided further prehearing briefing, see Docket

---

[1] Mark E. Rey is the current Under Secretary for Natural Resources and Environment, United States Department of Agriculture, and has been substituted for former Under Secretary Lyons.

[2] A more in-depth factual and procedural history, as well as the Court's analysis and ruling on the merits of the case can be found at Docket No. 47. See Docket No. 47. Given the similarity of the issues involved, the Court consolidated *Sierra Club v. Rey*, J00-0009 CV (JKS) ("*Sierra*") with *Alaska Forest Ass'n v. United States Dep't of Agric.*, J99-0013 CV (JKS) ("*AFA*"), during its ruling on the merits and for purposes of injunctive relief. See Docket Nos. 47 at 2; 76. Citations to the record and the docket shall be from *Sierra* unless otherwise noted. Reference to "Defendants" in this Order includes the Intervenor-Defendants Alaska Forest Association, City of Coffman Cover, Metlakatla Indian Community, Concerned Alaskans for Resources and Environment, City of Wrangell, City of Craig, Southeast Conference, John Conley, Doug Roberts, and Ketchikan Gateway Borough.

ORDER

Nos. 96; 98; 99, as well as supplemental briefs, *see* Docket Nos. 119; 120; 122. The Court held a three-day hearing in Juneau, Alaska, at which time the Court heard testimony from a variety of witnesses. *See* Docket Nos. 159–61. After reviewing and evaluating the briefs, the exhibits, and listening to the testimony, the Court issued its order on April 26, 2002. *See* Docket No. 162 at 2. The order implementing the injunction stated that:

> The Forest Service is hereby enjoined from permitting timber harvest and road building in roadless areas until forty-five days after the Forest Service publishes in the Federal Register a notice of availability of the final supplemental impact statement ordered by the Court in the Court's order of March 30, 2001, at Docket No. 47, in this action. For purposes of this injunction, an area is not considered to be a roadless area if it is within 1,200 feet of a road in existence on the date of this Order. For purposes of this injunction, timber harvest does not include bucking, yarding and removal of already felled timber. For purposes of this injunction, road construction does not include completion of a road in any location where the road right–of–way has already been felled. This injunction does not apply to timber harvest for right–of–way clearing and other activities associated with construction of the Swan Lake Electric Intertie project. This injunction does not apply to timber harvest or road building authorized by a site-specific timber project environmental impact statement for which the notice of availability was published in the Federal Register prior to April 13, 1999 (*i.e.*, the date on which James Lyons, Under Secretary for Natural Resources and Environment, United States Department of Agriculture, signed his decisions on the administrative appeals of the revised Tongass Land Management Plan).

*See* Docket No. 162 at 2. Given the important issues involved in the case and because time was of the essence for both the public and for all of the parties involved, the Court issued the order without immediately providing its analysis and reasoning for the scope of the injunction as that would have further delayed issuance of the injunction.

## DISCUSSION

### I. Propriety of Equitable Remedy

As a preliminary matter, Defendants disputed whether Plaintiffs were entitled to equitable relief to remedy the Forest Service's various violations of federal law. However, it is clear that

> [a] federal court's injunctive power arises from its jurisdiction in equity. As such, federal courts do not depend upon a specific delegation of power to issue injunctions in cases over which they otherwise have subject matter jurisdiction. In this regard, the Supreme Court has stated, unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.
>
> . . .
>
> A federal court's equity jurisdiction affords it the power to enjoin otherwise lawful activity when necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\J00-0009.020.wpd                       3

EXHIBIT 8
Page 3 of 7

*See United States v. Holtzman*, 762 F.2d 720, 724 (9th Cir. 1985) (citations and quotations omitted).

To reiterate, the Forest Service committed NEPA and NFMA violations by, *inter alia*, failing to consider wilderness areas. However, certain areas that were not considered for designation as wilderness areas might be designated wilderness areas after the Forest Service revises its environmental impact statement. In the meantime, however, those areas that were not considered for wilderness designation, and therefore are not currently designated as wilderness areas, might become ineligible for a wilderness designation (*e.g.*, because of logging in those areas which would either de jure or de facto destroy the possibility of a meaningful wilderness designation) while the Forest Services revises its environmental impact statement for the Tongass.[3] An injunction is therefore appropriate and necessary to preserve the status quo (*i.e.*, preventing logging on certain land to ensure that those areas retain their potential for designation as a wilderness area). *See, e.g., Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738–39 (9th Cir. 2001) (finding injunctive relief an appropriate remedy to protect the environment following a NEPA violation); *State v. Block*, 690 F.2d 753, 760, 765–69 (9th Cir. 1982) (affirming decision of district court that "enjoined the Forest Service from taking any action that might change the wilderness character of the disputed areas in California until it filed an EIS that satisfied NEPA's requirements and considered the impact of the decision upon the wilderness characteristics of these areas.").[4]

---

[3] Since NFMA requires forest plans, such as the TLMP, to be revised every 15 years, *see* 16 U.S.C. § 1604(f)(5)(A), and the last TLMP revision occurred in 1979, *see* Docket No. 33 at 6; 1997 TLMP at 1–1, an injunction is necessary to protect Plaintiffs' interests until the Forest Service produces its long overdue plan in a manner that comports with federal law.

[4] The Court makes no determination regarding whether the Forest Service should designate more or less wilderness areas in the Tongass. However, during the time in which it prepares a supplemental environmental impact statement, the Forest Service shall otherwise comply with federal law and not engage in any activities that will prejudice its ultimate decision. *See, e.g.*, 40 C.F.R. § 1506.1(c) ("While work on a required program environmental impact statement is in progress and the action is not covered by an existing program statement, agencies shall not undertake in the interim any major Federal action covered by the program which may significantly affect the quality of the human environment[.]").

ORDER

EXHIBIT 8
Page 4 of 7

## II. Injunctive Relief

To qualify for injunctive relief, Plaintiffs must demonstrate: 1) the inadequacy of legal remedies by showing irreparable injury; 2) success on the merits; and 3) that the injunction was warranted by a balance of the equities. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998); *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 967 (9th Cir. 1983). "[T]he public interest is a factor which courts must consider in any injunctive action in which the public interest is affected." *Watt*, 714 F.2d at 967.

> To determine whether injunctive relief is appropriate, even in the context of environmental litigation, [courts] apply the traditional balance of harms analysis. Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. When the proposed project may significantly degrade some human environmental factor, injunctive relief is appropriate.

*Babbitt*, 241 F.3d at 737 (quotations and citations omitted). The scope of the injunction should be as narrowly tailored as possible to "restrain no more than what is reasonably required to accomplish its ends." *See State v. City of Va. Beach*, 951 F.2d 596, 602 (4th Cir. 1991).

First, the inadequacy of legal remedies is apparent since continued timber harvest and road building in the Tongass would significantly change and harm the environment of the Tongass. *See, e.g.*, Docket No. 98, Ex. 19 (explaining that logging and road building in the Tongass would destroy old growth forests, animal habitats, ecosystems and biodiversity in the region). Since the public and individuals in Plaintiffs' organizations enjoy hiking, backpacking, camping, exploring, bird watching, viewing wildlife, trees, plants, and foliage, foraging, hunting, fishing, as well as a variety of other activities in the roadless areas of the Tongass, permitting timber harvest and allowing road building in these areas would prevent Plaintiffs from engaging in and enjoying these activities and would irreparably harm their interests. *See id.*, Exs. 2–18. Since Plaintiffs have demonstrated irreparable injury, injunctive relief is appropriate. The second factor was also met because Plaintiffs were successful in demonstrating NEPA and NFMA violations by the Forest Service. *See* Docket No. 47. Since Plaintiffs were successful on the merits of their action, they are entitled to injunctive relief if the balance of harms tips in their favor and it is in the public interest to do so.

ORDER

Third, for the reasons previously stated, it is clear that Plaintiffs will suffer irreparable injury as a result of the road building and logging. However, it is also evident that Defendants will suffer harm if a broad injunction is entered as well. For example, if the injunction barred all logging in the Tongass until the Forest Service completed its supplemental environmental impact statement, there is evidence that the potential job losses in the logging industry would cause a concomitant detrimental effect on both the logging industry and the Southeastern Alaskan economy. *See* Docket No. 120 at 25–51. Plaintiffs dispute the magnitude of the impact an injunction would have on the Southeastern Alaskan logging industry and economy, arguing that any injunction would have a minor effect on the logging industry because it is steadily declining anyway because of world market conditions (*i.e.*, high worldwide supply of wood and low prices). *See* Docket No. 98, Ex. 22.

A review of the testimony, *see* Docket Nos. 159–61, and the declarations, reveal that both Plaintiffs and Defendants are correct—in part. It appears that the Southeastern logging industry is declining for a variety of reasons, but that a broad based injunction would likely hasten the decline of the industry in general, hurt various timber companies and the Southeastern Alaskan economy. The magnitude of the decline in employment and the viability of all of the logging companies during the injunction is nonetheless speculative and unclear. It is clear, however, that Plaintiffs will suffer irreparable harm if no injunction is entered and Defendants will be harmed if an injunction is entered. Given the facts of this case, and after balancing the harms, the Court finds that an injunction is appropriate and shall provide a significant amount of relief to Plaintiffs while at the same time shall be narrowly tailored to minimize the harm to Defendants.[5] The Forest Service shall therefore be enjoined from permitting timber harvest and road building in roadless areas in the Tongass, subject to various exceptions.

---

[5] The public interest, explored directly and indirectly throughout these findings, also cuts both ways. On the one hand, it is evident that limiting logging and road building in the Tongass benefits nature lovers, the nature based tourism industry, and correspondingly, the Alaskan economy. *See* Docket No. 98, Ex. 21 (stating that road building and logging hurts organizations such as Alaska Wilderness Recreation & Tourism Association, which is involved wilderness based tourism). On the other hand, a broad based injunction would harm public works projects (*i.e.*, the Swan Lake Intertie project), hurt the logging industry, and thus, also slow the Southeastern Alaska economy.

ORDER

For example, timber harvest or road building authorized by site specific timber projects shall not be enjoined as those projects already have environmental impact statements which considered "the no-action alternative that would preserve the wilderness values." *See* Docket No. 119 at 20. Even though the forest-wide TLMP was flawed for failing to consider wilderness values, since wilderness values were already considered for the specific timber sales, *see* Docket No. 120 at 8, it is fair and equitable to allow those projects to continue since any revision would not be likely to affect these projects. Moreover, in areas where a road right-of-way has been cleared and timber has already been felled, the balance of the equities tips in favor of allowing removal of the already felled timber and completion of the road.

It is also evident that the balance of equities tips in favor of excluding the Swan Lake Electric Intertie project from the injunction. The Swan Lake Electric Intertie project is designed "to insure the financial viability of centralized power generation in rural communities" in Southeast Alaska by providing lower cost electricity which is up to "five times higher than in the more urban areas." *See* Docket Nos. 119 at 29. The importance of this project to the health, safety and economic development of Alaska and interest of the public outweighs any harm to Plaintiffs.

Allowing these limited activities to continue (*i.e.*, the Intertie project, clearing already felled lumber, and previously approved site specific logging) should allow important public works projects to move forward, the logging industry to remain viable, and limit the impact of the injunction on the Southeastern Alaskan economy, while at the same time preserving over 99% of all the roadless acreage for future wilderness designation. In light of these findings, the motion at **Docket No. 163** is moot and therefore **DENIED**. This case is closed.

**IT IS SO ORDERED.**

Dated at Anchorage, Alaska, this 13 day of May 2002.

                              **JAMES K. SINGLETON, JR.**
                              United States District Judge

J00-0009--CV (JKS)
--------------------------------------------------------
J. CLARK
M. SEAVER
B. LANDON (AUSA)
S. BRANDT-ERICHSEN
T. WALDO
Certified cy J99-0013 CV (JKS)

EXHIBIT 8
Page 7 of 7