FILED

JUL 31 1987

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CITY OF TENAKEE SPRINGS;
SOUTHEAST ALASKA CONSERVATION
COUNCIL; THE SIERRA CLUB; and
THE WILDERNESS SOCIETY,

    Plaintiffs,

vs.

CRAIG V. COURTRIGHT, District
Ranger, Sitka Ranger District,
Tongass National Forest;
ET AL.,

    Defendants,

and

ALASKA PULP CORPORATION, an
Alaska corporation, ET AL.,

    Intervenor-Defendants.

TENAKEE II, KUIU

RECEIVED
AUG 3 1987
Office of the
General Counsel
JUNEAU, ALASKA

MEMORANDUM AND ORDER ON
PORT CAMDEN ROAD/EAST
KUIU MANAGEMENT AREA

J86-024 Civil

    THIS CAUSE comes before the court on plaintiffs' motions for a temporary restraining order and preliminary injunction regarding logging operations in the East Kuiu Management Area, on the

EXHIBIT 12
Page 1 of 5

court's July 23 order to show cause, and on plaintiffs' motion for leave to amend complaint and associated motion for shortened time. Plaintiffs have also moved that consideration of a preliminary injunction be consolidated with a final decision on the merits of the East Kuiu issue. No objection having been raised, the court will treat plaintiffs' motion as one for a permanent injunction.

Initially, the court finds that plaintiffs have responded adequately to the court's show cause order. Amendment of the complaint is unnecessary.

Plaintiffs seek an injunction halting all timber harvest and related activities in East Kuiu. In 1987, such an injunction would prevent construction of a 4.94 mile segment of Road 6402 in VCU's 420 and 419. The legal underpinning for an injunction, at least as it relates to the road, is not in dispute, the court previously having declared that no adequate site-specific EIS has been prepared for any project covered by the ALP 1981-86 Timber Sale Operating Plan. In arguing that the balance of equities favors the proposed injunction, plaintiffs have provided information as to East Kuiu alone.

The court's June 24 ruling established three principles that are relevant to the East Kuiu dispute. First, the court found the 81-86 EIS inadequate for any project in the 50-year contract area. Second, the court acknowledged that an injunction is

EXHIBIT 12
Page 2 of 5

ordinarily appropriate where NEPA has been violated, to ensure that the requisite study precedes any irretrievable commitment of resources. Third, the court suggested that in the present context -- where dozens of projects are proposed and will be spread over many years, and where some meaningful study has already taken place -- the court would not insist on instant compliance with NEPA to the extent that such relief would threaten serious economic dislocation.

A logical way to proceed in the wake of the June 24 ruling would have been to examine the entire 50-year contract area. The parties and the court would develop a harvest strategy for 1987 and 1988 to accomplish three goals: (1) keep APC and the principal Southeastern mills in business; (2) minimize environmental harm pending completion of supplemental environmental studies; and (3) keep as many options open as possible with respect to later roadbuilding and harvests, so that the supplemental studies could consider a broad range of alternatives.

Plaintiffs have taken a different approach. Instead of permitting the court to evaluate the contract area as a whole, they have elected to seek piecemeal relief as to discrete projects. Because the threshold for serious economic dislocation has not yet been reached, the balance of equities as to any particular project will appear to favor an injunction. Hence, plaintiffs' counsel could point to any project and have it enjoined; the choice of which projects should be halted is

EXHIBIT 12
Page 3 of 5

reserved exclusively to plaintiffs.[1] This approach makes the Sierra Club Legal Defense Fund the timber czar of Southeastern Alaska.

The court will not allow itself to be led blindly from one VCU to the next. If the court is to further restrict APC's operations pending NEPA compliance, the court must be provided with the full picture of ongoing operations in the contract area. It may be, for example, that VCU's 420 and 419 are the most logical place for an interim, pre-compliance operation, when all other alternatives are weighed. Indeed, there is some evidence that this is so. Given that some logging and roadbuilding must continue, the court cannot (absent a settlement) be excluded from the process of deciding where those operations should or should not take place. To make the same point another way, the court cannot truly balance the equities with respect to the Port Camden Road without evaluating the remainder of the 50-year contract area.

Any motion for an injunction based on the contract-wide declaratory relief must address the balancing of equities on a contract-wide basis. The instant motions must be denied.

The parties have indicated that a settlement conference might be helpful after additional time for preparation and discussion. The court is willing to arrange such a conference upon motion of any party.

---

[1] Apparently, plaintiffs may seek additional injunctions on this basis. They have not revealed where or when such relief will be sought.

EXHIBIT 12
4 of 5

Accordingly, IT IS ORDERED:

(1) THAT plaintiffs' July 20, 1987 motion for preliminary injunction, deemed a motion for permanent injunction, is denied without prejudice as set forth above;

(2) THAT plaintiffs' July 9 and July 13, 1987 motions for temporary restraining order are denied;

(3) THAT plaintiffs' July 26, 1987 motion for leave to amend complaint is denied;

(4) THAT plaintiffs' July 26, 1987 motion for shortened time is denied as moot.

DATED at Anchorage, Alaska, this 31st day of July, 1987.

United States District Judge

counsel notified by telephone

Exhibit 12
Page 5 of 5